# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) **INDICTMENT** CR 15-54 JNE/HB |
| v. | ) 18 U.S.C. § 1341 |
| | ) 18 U.S.C. § 1956(a)(2)(B)(i) |
| (1) IRINA VOROTINOV and | ) 18 U.S.C. § 1957 |
| (2) IGOR VOROTINOV, | ) 18 U.S.C. § 981(a)(1)(C) |
| | ) 28 U.S.C. § 2461(c) |
| Defendants. | ) |

THE UNITED STATES GRAND JURY CHARGES THAT:

## INTRODUCTION

1.     From at least in or about September 2011 to on or about March 23, 2012, the defendants, Irina Vorotinov ("Irina") and her former husband, Igor Vorotinov ("Igor"), devised and executed a scheme to defraud Mutual of Omaha Insurance Company ("Mutual of Omaha") of over $2 million by staging the death of Igor in the Republic of Moldova ("Moldova") and then submitting a life insurance claim to Mutual of Omaha as if Igor had really died.

2.     At all times relevant to this Indictment, Irina was a resident of the State of Minnesota.

3.     Igor was a resident of the State of Minnesota until approximately December 2010, when he left the United States to reside in Moldova.

## THE SCHEME TO DEFRAUD

4.     From at least in or about September 2011 and continuing through March 23, 2012, in the State and District of Minnesota and elsewhere, the defendants,



SCANNED

FEB 1 9 2015

U.S. DISTRICT COURT MPLS

**IRINA VOROTINOV, and**
**IGOR VOROTINOV,**

knowingly and intentionally devised and executed a scheme and artifice to defraud and to

obtain money and property from Mutual of Omaha by means of material false and

fraudulent pretenses, representations, and promises, and concealment of material facts.

5.      It was part of the scheme to defraud that, in March 2010, Igor obtained a $2

million life insurance policy on his own life from Mutual of Omaha (the "Life Insurance

Policy") which designated Irina as the primary beneficiary.

6.      It was further part of the scheme to defraud that, on October 1, 2011, Igor

staged his death in Moldova by arranging for the corpse of an unknown person to be

placed between two bushes at the entrance of the Cojusna village in Moldova and placing

in the clothes of the corpse Igor's passport and other identification documents.

7.      It was further part of the scheme to defraud that, in October 2011, Irina

traveled to Moldova, where she positively identified the corpse as the corpse of Igor in

order to induce the Moldovan authorities to issue a death certificate indicating that Igor

had died on October 1, 2011.

8.      It was further part of the scheme to defraud that, on November 7, 2011,

Irina submitted a fraudulent death claim to Mutual of Omaha for $2 million which was

based upon the staged and fictitious death of Igor.

<u>U.S. v. Vorotinov, et al.</u>

## COUNT 1
(Mail Fraud)

9.    Paragraphs 1 through 8 are incorporated by reference as if fully set forth herein.

10.    On or about March 23, 2012, in the State and District of Minnesota and elsewhere, the defendants,

**IRINA VOROTINOV, and
IGOR VOROTINOV,**

for the purpose of executing the above-described scheme and artifice to defraud, knowingly caused Mutual of Omaha to mail Irina a check in the amount of $2,048,414.09 (the "Proceeds Check") to Irina's residence located in Maple Grove, Minnesota.

All in violation of Title 18, United States Code, Section 1341.

## COUNT 2
(Engaging in a Monetary Transaction in Criminally Derived Property)

11.    Paragraphs 1 through 8, and paragraph 10, are incorporated by reference as if fully set forth herein.

12.    On or about March 29, 2012, Irina endorsed the Proceeds Check to a third party (the "Third Party") and then caused the Third Party to deposit the Proceeds Check into a U.S. Bank account controlled by the Third Party (the "Third Party Account").

13.    On or about April 26, 2012, in the State and District of Minnesota, the defendant,

**IRINA VOROTINOV,**

knowingly caused the Third Party to engage in a monetary transaction in criminally derived property of a value greater $10,000 which was derived from specified unlawful activity, namely, the mail fraud scheme described in paragraphs 1 through 8, and paragraph 10, above, by and through U.S. Bank, a financial institution affecting interstate and foreign commerce, specifically, Irina caused the Third Party to transfer $1.5 million from the Third Party Account into another account at U.S. Bank in the name of Irina's son, Alkon Vortinov ("Alkon's US Bank Account").

All in violation of Title 18, United States Code, Section 1957.

## COUNT 3
### (International Concealment Money Laundering)

14. Paragraphs 1 through 8, paragraph 10, and paragraph 13 are incorporated by reference as if fully set forth herein.

15. On or about May 23, 2012, Irina Vorotinov caused Alkon Vorotinov to withdraw $1.5 million in the form of a cashier's check from Alkon's US Bank Account and then caused Alkon Vorotinov to deposit the check into an account at TCF Bank over which Alkon Vorotinov exercised control (the "TCF Account").

16. On or about June 3, 2012, in the State and District of Minnesota and elsewhere, the defendant,

**IRINA VOROTINOV,**

knowingly caused Alkon Vorotinov to transmit funds from a place in the United States to or through a place outside the United States, knowing that the funds transmitted represented the proceeds of some form of unlawful activity and knowing that the

4

transmission of such funds was designed in whole and in part to conceal or disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, viz., Irina Vorotinov caused Alkon Vorotinov to transfer $1.5 million from the TCF Account, which Irina Vorotinov knew contained proceeds of her fraudulent scheme against Mutual of Omaha, to an account in Switzerland in the name of and under the control of an entity and person unknown to the grand jury.

All in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

### FORFEITURE ALLEGATIONS

Counts 1 through 3 of this Indictment are incorporated herein by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

As a result of the offense alleged in Count 1, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 1341.

As a result of the offenses alleged in Counts 2 and 3 of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, or any property traceable to such property, including, but not limited to the sum of money involved in the monetary transactions alleged in Counts 2 and 3 of this Indictment.

If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c).

All in violation of Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), 1341, 1956(a)(2)(B)(i), and 1957, and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY                    FOREPERSON